737 So.2d 82 (1999)
CENLA STEEL ERECTORS, Plaintiff-1st Appellant,
v.
Clayton McDONALD, Defendant-2nd Appellant.
No. 98-1355.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1999.
Writ Denied May 14, 1999.
*83 Madeline Lee, Alexandria, for CENLA Steel Erectors.
Joseph Texada Dalrymple, Alexandria, for Clayton T. McDonald.
BEFORE: DOUCET, C.J., THIBODEAUX, and WOODARD, Judges.
THIBODEAUX, Judge.
Clayton Travis McDonald, an injured steel worker, appeals from a judgment ordering his forfeiture of benefits for mis-representations to a field investigator regarding prior back pain, shoulder injury and surgeries, and workers' compensation benefits, pursuant to La.R.S. 23:1208. CENLA Steel Erectors appeals from the hearing officer's assessment of a $5,000.00 penalty for its violation of La.R.S. 23:1208. CENLA also appeals from a finding that McDonald did not violate La.R.S. 23:1208.1 through misrepresentations made on a medical questionnaire. For the following reasons, we affirm the employee's forfeiture of benefits under La.R.S. 23:1208, and we affirm the judgment refusing a forfeiture under La.R.S. 23:1208.1, although for reasons other than those of the workers' compensation judge. We also affirm the authority of the workers' *84 compensation judge to bring a claim against the employer and to assess civil penalties on her own notice under La.R.S. 23:1208(D), but we reverse her finding against CENLA for employer violation of La.R.S. 23:1208. Finally, we reverse the penalty of $5,000.00 against CENLA.

I.

ISSUES
We must decide:
1) whether the employer was properly granted relief under La.R.S. 23:1208 for benefits past, present, and future;
2) whether the employer should have also been granted relief under La. R.S. 23:1208.1;
3) whether the employer made misrepresentations regarding his knowledge of the claimant's prior shoulder injury;
4) whether the workers' compensation judge could properly assert a 1208 claim against the employer on its own notice without such assertions by either party; and,
5) whether the workers' compensation judge properly admitted job applications as rebuttal testimony when nothing was raised at trial by either party which was rebuttable by these job applications.

II.

FACTS
McDonald, a steel worker, sustained a back injury in December shortly after his employment with CENLA Steel Erectors (CENLA) in October 1996. He had previously sustained a shoulder injury in November of 1994, while employed with Lexicon, Inc., apparently at a Schueck Steel facility in Kentucky. He underwent two shoulder surgeries for the prior injury and received medical and workers compensation benefits for almost two years before his ultimate lump sum settlement with Lexicon for $22,677.00.
At trial, McDonald testified that he received a 20% permanent disability rating and was limited to light to medium duty work after the 1994 shoulder injury. The medical reports of Dr. Arsham Naalbandian indicate that McDonald complained of back pain from the date of the 1994 accident until his last appointment in August of 1996 when he ceased treatment and was released. His reports indicated L5 distribution and suggested an MRI. The 1994 Employer Injury Report indicated a shoulder and a back injury.
In late October of 1996, when McDonald went to work for CENLA, he answered "no" to all questions on CENLA's employment medical questionnaire. He represented that he had never had a surgery, work injury or claim, did not have any disability, had never received workers' compensation or medical benefits, had never been given any disability rating, and that he had never had aches or pains of the back. Before applying for employment with CENLA, McDonald worked briefly for M. Matt Durand, Inc. (Durand) and for Courtney Construction Company of Alexandria, Inc. (Courtney). On his July 1996 employment medical questionnaire with Durand, McDonald answered "no" to all questions regarding prior injuries, surgeries, workers' compensation claims, and disabilities, and indicated that he had never had aches or pains of the back. On his September 1996 employment questionnaire with Courtney, McDonald left questions regarding injuries and workers' compensation benefits unanswered but answered no to back trouble and physical disability.
After the December 1996 back injury with CENLA, the workers' compensation carrier for CENLA sent a field investigator, Julie Harville, to obtain a recorded statement from McDonald. In this recorded testimony on February 4, 1997, Mc-Donald denied ever having had a prior work injury, workers' compensation claim, any disc problems, or treatment for his *85 back. In response to questions about previous employment in February 1997 and at trial in January 1998, McDonald listed six previous employers and a pipeline Local, but failed to list Schueck Steel where he was injured in 1994.
Before coming to work for CENLA, Mc-Donald frequently went to CENLA's outdoor job sites to become acquainted with a hiring partner, Wayne Murrell, and to visit two friends, Elliott and Maricle, who were recommending McDonald for a job with CENLA. Elliott and Maricle joked loudly with McDonald about drawing money while not working and assumed that Murrell heard references to the prior shoulder injury. Some testimony indicated that the shoulder injury was specifically mentioned to Murrell before he hired McDonald in late October 1996, but Murrell did not have any such recollection.
In December of 1996, a few days before the second injury, McDonald stated that he missed work and subsequently told Murrell that he had gone to pick up his workers' compensation settlement and to purchase a car. Then, on December 23, 1996, while attempting to lift a steel support column for a stairwell under construction, McDonald sustained a back injury. Subsequent medical reports indicated a herniated disc at L5-S1. Surgery was now indicated. At trial, McDonald repeatedly denied any previous back problems. Mr. Murrell, on behalf of CENLA, denied knowledge of the prior shoulder surgeries. There is no evidence or allegation that Murrell knew of the disability rating or had any information regarding the prior back problems. CENLA was denied reimbursement from the Second Injury Fund based upon its lack of knowledge of the previous work injury and disability rating.
The workers' compensation judge found that McDonald made material misrepresentations regarding his prior injuries and ordered a forfeiture of benefits under La. R.S. 23:1208. However, she found that CENLA knew of the prior shoulder injury, prejudiced its own rights regarding the Second Injury Fund, and found no violation by McDonald of La.R.S. 23:1208.1. The workers' compensation judge also found that CENLA had misrepresented its knowledge of the shoulder injury and assessed CENLA with a $5,000.00 penalty under La.R.S. 23:1208.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court may not set aside a trial court's or jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). In a workers' compensation case, as in other cases, we are bound by the manifest error rule and we may not set aside the factual findings of the fact finder absent a finding by this court that they are clearly wrong or manifestly erroneous. Kampen v. Conway Southwest Exp., 95-45 (La.App. 5 Cir. 4/12/95); 655 So.2d 380; Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129.
In order to reverse under the manifest error rule:
1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).

CENLA's Assignments of Error
CENLA contends that the workers' compensation judge erred:
1) in ruling on an issue or claim not pled by any party and not properly before the court;

*86 2) in finding that the employer made misrepresentations regarding his knowledge of the employee's prior shoulder injury; and,
3) in denying the employer's claim for forfeiture of benefits under La.R.S. 23:1208.1.

McDonald's Assignments of Error
Clayton McDonald asserts the following assignments of error:
1) the trial court erred in granting employer relief under 23:1208 an[d] forfeiting employee's claim for benefits, past, present, and future;
2) the trial court erred in allowing plaintiff to enter job applications as rebuttal testimony when nothing was raised in plaintiff or defendant's case in chief rebuttable by job applications.

Forfeiture of Benefits
At issue in this case are La.R.S. 23:1208 and 23:1208.1, the statutes relating to the forfeiture of workers' compensation benefits due to misrepresentations made by an employee, and the assessment of penalties for misrepresentations made by an employer. Section 1208 was amended and revised in 1997 with effective dates of June 11, 1997. However, the misrepresentations alleged against McDonald occurred in late 1996 and early 1997. The date of the false statement or misrepresentation determines the applicable version of the statute governing the misrepresentations. Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95); 660 So.2d 7. Hence, the applicable version of § 1208 which governs in this case is the 1995 version, which provides in pertinent part as follows:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . .
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the director of not less than five hundred dollars nor more than five thousand dollars.
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
Louisiana Revised Statutes 23:1208.1 states:
§ 1208.1. Employer's inquiry into employee's previous injury claims; forfeiture of benefits
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
Hence, the workers' compensation statutes set forth two separate anti-fraud provisions by which employers may affirmatively defend against paying a claim. Resweber, 660 So.2d 7, discussed the proper interpretation and application of the *87 two statutes. The Louisiana Supreme Court made the following statement:
We hold that each of these anti-fraud provisions serves a specific purpose and applies to different situations. Louisiana Revised Statutes 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of an employee's accident or claim. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. The purpose of La.R.S. 23:1208.1, however, is to allow the employer to ask prospective or current employees about prior injuries. It applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. The statute results in the forfeiture of a claimant's workers' compensation benefits when that claimant made false statements concerning a prior injury in response to such an inquiry. For Section 1208.1 to be enforceable, written notice must be given to the employee that giving false statements may result in the forfeiture of workers' compensation benefits.
Id. at 9.

McDonald's Violation of § 1208
It is clear that either statute can be applied to appropriate instances in which it is alleged that an employee has made a false statement or misrepresentation in a workers' compensation matter. As to the § 1208 violation by McDonald, the record is clear that McDonald willfully made false statements and representations for the purpose of obtaining workers' compensation benefits from CENLA. In February 1997, he was still receiving benefits from CENLA for the 1996 back injury. To avoid losing those benefits, and to obtain medical benefits for back surgery, Mc-Donald misrepresented his previous workers' compensation injuries and claims, shoulder surgeries, and back problems in a recorded statement to the compensation carrier's field investigator, Julie Harville. At trial, McDonald testified that all of his misrepresentations were mistakenly made because he thought all questions pertained to previous back injuries alone, and he did not consider his previous shoulder injuries, claims and surgeries applicable.
However, the record establishes a pattern of willfully made statements and misrepresentations that belie arguments to the contrary. Louisiana Revised Statutes 23:1208 at subsection A prohibits such willful misrepresentations and at subsection E provides for the employee's forfeiture of benefits. Accordingly, we affirm the forfeiture of benefits under § 1208. However, the record indicates that all parties stipulated that CENLA had waived reimbursement of past benefits paid. Furthermore, prior to the 1997 amendment of § 1208, there was no remedy which provided for reimbursement of benefits. Therefore, the benefits forfeiture does not include past benefits but begins at the time of the signing of the judgment by the workers' compensation judge.

McDonald's Non-Violation of § 1208.1
Having found a forfeiture of benefits under § 1208 for false statements made after McDonald's accident and after his claim was pending with CENLA, we now address whether there was also a forfeiture of benefits for McDonald's false representations made prior to the accident at CENLA. Louisiana Revised Statues 23:1208.1 provides that untruthful answers on an employment questionnaire will lead to forfeiture of benefits. CENLA contends that the workers' compensation *88 judge erred in failing to find a 1208.1 violation by McDonald. We disagree, but we arrive at that conclusion for different reasons than those articulated by the workers' compensation judge. Section 1208.1 sets forth four criteria, only three of which must be met to enforce the forfeiture. We find that the workers' compensation judge made an error of law in interpreting § 1208.1 to require all four criteria. However, the error was harmless since we also find that there was no violation of § 1208.1.
More specifically, § 1208.1 provides that the employee must give (1) untruthful answers (2) on a written form which warns the employee in bold letters that untruthful answers may result in a forfeiture of benefits; and that the untruthful answers (3) must directly relate to the medical condition for which the benefit claim is made, (4) "or" must affect the employer's ability to receive reimbursement from the Second Injury Fund, either of which (3 or 4) will prejudice the employer.
The workers' compensation judge stated in her ruling that the employer must prove "that there is a direct relation between those untruthful statements and the claim, and that this affects the employer's right to recovery under the second injury board." She then stated that, "This Court believes firmly that Mr. Murrell, ... prejudiced his own rights in regards to the second injury claim, that notwithstanding the health questionnaire, which very clearly was false, that Mr. Murrell did indeed have knowledge of a prior shoulder injury and so there was no violation of 1208.1 per se." The mistake of law is that the affect on the employer's ability to collect from the Second Injury Fund is not required. It is enough that the untruthful answer directly relates to the medical condition for which the claim is made.
In the present case, the employer made no showing that a direct relationship existed pursuant to La.R.S. 23:1208.1. Wise v. J. E. Merit Constructors, Inc., 97-684 (La.1/21/98); 707 So.2d 1214, held that a direct relation is established under § 1208.1 when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition. Here, there were no medical reports or any other evidence indicating that the herniated disc sustained at CENLA was inevitable or likely to occur because of the prior shoulder surgeries and back pain.
As to the last criterion requiring prejudice to the employer by affecting its ability to obtain reimbursement from the Second Injury Fund, CENLA has not shown that McDonald's untruthful answers caused the denial of reimbursement. More specifically, while Mr. Murrell denied knowing about the prior work injury and shoulder surgery when he hired Mc-Donald, Mr. Murrell admitted to having learned of the injury and workers' compensation settlement when McDonald missed work to go pick up the settlement a week or so before the accident at CENLA. Contrary to CENLA's assertions, the Second Injury Fund only requires knowledge of pre-existing conditions before the accident, not before the hiring date. La.R.S. 23:1378.
Therefore, while McDonald misrepresented the existence of a prior injury on the questionnaire, he told Murrell of the workers' compensation settlement prior to the accident at CENLA, and his earlier misrepresentations on the questionnaire did not prejudice CENLA's ability to seek reimbursement under § 1208.1. CELA's failure to acknowledge that information on its application to the Second Injury Fund did, however, prejudice its rights, as the workers' compensation judge correctly found.
In his second assignment of error, McDonald contends that the trial court erroneously admitted job applications as rebuttal testimony when nothing was raised in plaintiff's or defendant's case-in-chief which was rebuttable by job applications. McDonald is actually referencing his previous employment records containing *89 the questionnaires from Durand and Courtney. However, CENLA offered the questionnaires to rebut McDonald's testimony that the reason for his untruthful answers on the CENLA questionnaire was that he completed it in a hurry.
CENLA offered the identical questionnaire from Durand and a similar questionnaire from Courtney to show that Mc-Donald was not in a hurry but was in the habit of answering falsely the questions relating to previous injuries, claims, surgeries, disabilities, aches and pains. The Louisiana Code of Evidence Article 404(B) provides that in civil and criminal cases, evidence of other acts or wrongs is admissible to prove intent, knowledge, and absence of mistake or accident. Likewise, subsection A provides that evidence of a person's character trait, such as moral quality, in this case, lying, is admissible to rebut other evidence of moral quality. McDonald testified that he did not intentionally lie, but was only in a hurry. The questionnaires rebutted that testimony by showing that he intentionally lied because he had made identical false statements on two occasions in the recent past. Moreover, the record indicates that CENLA had witnesses to testify to the documents and that the workers' compensation judge admitted the records as rebuttal testimony for judicial economy. Any potential error in allowing the records after the case-in-chief was closed was harmless error.

Court's Assertion of § 1208 Claim Against Employer
CENLA contends that it was error for the workers' compensation judge to bring on her own notice a § 1208 claim against CENLA where that claim was not brought against CENLA by McDonald or any party to the suit. We disagree. As previously stated, the 1995 version of § 1208 was applicable at the time of Mc-Donald's misrepresentations in late 1996 and early 1997. Subsection D at that time provided that the "director" could assess a civil penalty of up to $5,000.00 against a person who violated § 1208, as shown above.
However, the misrepresentations alleged against CENLA by the workers' compensation judge related to Mr. Murrell's assertions at trial in January 1998 that CENLA had no knowledge of the prior workers' compensation injury. Accordingly, any misrepresentation therein would be subject to the revision of § 1208 which became effective on June 11, 1997. At that time, subsection D provided as follows:
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct. (emphasis added).
Hence, subsection D of this statute was amended in 1997 to provide for limited reimbursement to the employer of benefits already paid up to the time the employer learned of the misrepresentation, where there was no remedy of reimbursement for the employer before. See Sumrall v. Luhr Bros., 95-779 (La.App. 1 Cir. 12/15/95); 665 So.2d 796, writ denied, 96-187 (La.3/15/96); 669 So.2d 425. Subsection D's provision for civil penalties was also amended in 1997 to allow the assessment of penalties by the "workers' compensation judge," rather than the "director." Just as the statute provides the workers' compensation judge with authority to remedy fraud upon the employer through reimbursement, it also provides the workers' compensation judge with authority to, upon her own notice, penalize the employer if it has violated the statute. Moreover, La.Code Civ.P. art. 862 provides that a judge can upon its own motion grant relief *90 to the entitled party "even if the party has not demanded such relief in his pleadings...." In the present case, however, the penalty was apparently to be paid to the State rather than to the aggrieved party. Since the penalty does not benefit any party to the litigation, it is unlikely that any party would plead for it in his petition.[1]
The general rule is that workers' compensation laws are to be liberally construed in favor of the claimant. City of Crowley v. Comeaux, 93-1116 (La.App. 3 Cir. 4/6/94); 638 So.2d 658, writ denied, 94-1184 (La.6/24/94); 640 So.2d 1355. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La.Civ.Code art. 9. Words and phrases are to be construed according to the common and approved usage of the language. La.R.S. 1:3. When the wording of a statute is clear and free from ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La.R.S. 1:4.
Applying these legal precepts, we find the language in La.R.S. 23:1208(D) is clear and unambiguous, and its application, as written, does not lead to absurd consequences. The plain language of La.R.S. 23:1208(D) grants authority to a workers' compensation judge to give and to take with regard to the employer; that is, to order reimbursement of compensation benefits already paid by an employer, and also to impose civil penalties upon the employer for its violation of § 1208. Hence, CELA's contention that it was improper for the workers' compensation judge to assert upon her own notice that an employer had violated § 1208 is without merit. However, we do not agree that the employer in this case, CENLA, has violated § 1208. Accordingly, we reverse the penalties against CENLA.

CENLA's Non-Violation of § 1208
CENLA assigns as error the workers' compensation judge's finding of an employer violation of § 1208 due to the misrepresentations of Mr. Murrell regarding his knowledge of McDonald's pre-existing shoulder injury, claim and surgeries. We agree, but for reasons other than those urged by CENLA. At trial, Mr. Murrell denied that anyone had told him of Mc-Donald's previous shoulder injury before he hired McDonald. However, he admitted to learning about the settlement when McDonald took off a day of work to pick it up, shortly before his accident and back injury at CENLA. Two friends of Mc-Donald, Mr. Maricle and Mr. Elliot, who recommended McDonald to Murrell for the job with CENLA, testified at trial. Mr. Maricle stated that he did not recall talking to Murrell about McDonald's shoulder before Murrell hired McDonald. However, Mr. Maricle admitted to writing and signing a short statement approximately one year after the accident at CENLA, indicating that he had discussed the shoulder problem with Murrell when he recommended that Murrell hire Mc-Donald.
Mr. Elliot stated at trial that McDonald would come by the CENLA work sites and the men would yell out to him from the rooftop, and joke with him about being off work and drawing workers' compensation benefits. Mr. Elliot stated that Mr. Murrell was present during some of those visits. He further stated that he thought he told Mr. Murrell that McDonald "just got off workmen's comp ... for that shoulder injury ... and the doctor released him and he was ready to go to work." While we find this testimony to be weak when used to show prior knowledge, we cannot say *91 that the workers' compensation judge, who assessed it first-hand, was manifestly wrong in finding that Mr. Murrell had knowledge of the pre-existing shoulder injury and claim before he hired McDonald, and that he misrepresented that knowledge at trial. However, we do not agree that Mr. Murrell violated § 1208, or that he should be penalized.
More specifically, as to violations by employers, § 1208 requires that the employer willfully make a false statement or representation for the purpose of defeating a worker's claim for benefits. In this case, McDonald sustained a back injury at CENLA, and was receiving benefits for that back injury. While Murrell denied at trial any knowledge of McDonald's prior shoulder injury and surgeries at the time of hiring him, this was not done to defeat McDonald's claim for a subsequent back injury. There is no evidence in the record that the two injuries are related, or that prior shoulder surgery would defeat a claim for a back injury. Mr. Murrell did not know of the disability rating as a result of the shoulder surgeries, and he did not know of Dr. Naalbandian's medical reports indicating that McDonald had back problems as well as shoulder problems. Therefore, he could not have lied about the material facts involving the back, for the purpose of defeating a claim for benefits based upon a back injury.
Hence, we find that any misrepresentations made by CENLA regarding its knowledge of a pre-existing shoulder injury and workers' compensation claim are not material and were not made for the purpose of defeating a claim for benefits based upon a back injury. Accordingly, we reverse the $5,000.00 penalty against CENLA.

IV.

CONCLUSION
Based upon the foregoing reasons, we affirm the judgment of the workers' compensation judge resulting in McDonald's forfeiture of future benefits under § 1208 and also affirm the finding of no violation by McDonald under § 1208.1, but for the reasons assigned. Further, we find that, while the judge had authority under § 1208(D) to assess penalties against an employer upon her own notice, we reverse the $5,000.00 penalty against CENLA because CENLA did not willfully make false statements for the purpose of defeating the benefit payments to McDonald for a back injury under La.R.S. 23:1208.
AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.
NOTES
[1] We are not being asked to decide who the legislature intended as the recipient of a penalty assessed under § 1208(D). In Bowman v. F. Christiana and Co., Inc., 553 So.2d 971 (La.App. 4 Cir.1989), the court articulated that as to wrongful termination under La.R.S. 23:1361(C), the legislature intended that the worker receive the benefit of the penalty, rather than the state.