# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 05-340


**MICHAEL CHAISSON**

**VERSUS**

**PHILIP SERVICES CORPORATION**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, NO. 02-08688
HONORABLE SAM LOWERY, PRESIDING

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Oswald A. Decuir and Marc T. Amy, Judges.

Amy, J., concurs in part, dissents in part and would reverse the award of penalties and attorney's fees.

**AFFIRMED, AS AMENDED.**


**Mark Zimmerman**
**4216 Lake Street**
**Lake Charles, LA   70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Michael Chaisson**


**Bret C. Beyer, Sr.**
**Hill & Beyer**
**P.O. Box 53006**
**Lafayette, LA  70505-3006**
**(337) 232-9733**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Philip Services Corp.**

**COOKS, Judge.**

The employer appeals the judgment of the Office of Workers' Compensation finding the claimant suffered a work-related accident and was injured as a result. Claimant was awarded the appropriate workers' compensation and medical benefits due, as well as penalties and attorney fees. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The claimant, Michael Chaisson, alleged he injured himself on February 26, 2002, while engaged in the course and scope of his employment with Philip Services Corporation (hereafter PSC). Claimant stated he injured himself on that date while pulling heavy metal heater doors. According to claimant, he reported his injury on that date to Harold Nassar, who he believed was his supervisor and would note the accident in a company logbook. It was agreed by both parties that standard practice at PSC was to record incidents in a logbook to protect the record without the need of reporting a new work injury to its insurer because most injuries were minor. If the injury turned out to be serious, then a formal claim would be filed and the notes in the logbook would serve as proof of the accident. Claimant stated he repeatedly reminded Nassar about his accident. Nassar eventually denied he was asked by claimant to document any accident that occurred at work. There was testimony from Debra Chaisson (claimant's wife) and Janet Wing (claimant's sister-in-law) that they overheard a conversation between Nassar and claimant discussing an incident report that was made when claimant was hurt at work.

Claimant testified he continued working after the accident, despite being in pain, with the expectations that his back would improve. However, the pain became worse and began radiating into his legs. Eventually, at his wife's insistence, he saw his family doctor, Dr. Jason Ramm, on April 26, 2002. He stopped working two days

later. After examining claimant, Dr. Ramm referred him to an orthopedic surgeon, Dr. John Noble, who diagnosed him with lumbar spondylolisthesis. Dr. Noble believed claimant required a back fusion. Claimant did not inform Dr. Ramm and Dr. Noble about any work incident that caused his back problems. Claimant explained he did not do so because he had no plans to file a workers' compensation claim. He further stated that in the past his back had given him problems, but it had always resolved itself in a brief period of time. He also maintained any prior back discomfort was never serious enough to prevent him from working.

Claimant stated after the visit with Dr. Noble, when he became aware of the serious nature of his condition, he contacted Rodney LePointe to check on whether his February 26, 2002 accident was noted in the logbook. Although LePointe found there was no such accident noted, he admitted that claimant seemed surprised that Nassar had not entered the incident into the logbook. The employer alleged that claimant then asked LePointe to falsify the logbook by including the incident. Claimant denies making such a request. LePointe in his testimony did not state that claimant asked him to lie, but characterized their conversation as follows:

> When he asked me, you know, he just kind of mentioned it and I said, "I can't do it." And he said that – he said, "That don't matter." He said, "Harold's [Nassar] got it documented."

A workers' compensation claim was filed on November 19, 2002. The employer defended the claim on several grounds, arguing there was no proof that a work accident occurred, and even if a work accident were found to have occurred, it did not cause the disability complained of by claimant. The employer also contended claimant forfeited any right to benefits because of alleged untruthfulness and the commission of fraud pursuant to La.R.S. 23:1208. The parties agreed no compensation benefits have been paid and claimant received unemployment benefits

from April 28, 2002 until January 2003.

After a trial before the Office of Workers' Compensation, the workers' compensation judge (WCJ) found a work-related accident did occur when claimant pulled off the heavy metal heater door, and that the medical evidence showed he was injured as a result. The WCJ also found the claimant fulfilled his obligation to report the accident, but "the system either just didn't work or the individuals who are part of the system didn't do what they were supposed to do." The WCJ found the employer was unable to establish that claimant was guilty of fraud pursuant to La.R.S. 23:1208.1. Claimant was awarded the appropriate workers' compensation and medical benefits due, as well as penalties and attorney fees. This appeal followed, wherein the employer asserts the following assignments of error:

1.   The WCJ erred in determining that claimant suffered a work-related accident and resulting injury on February 26, 2002.

2.   The WCJ erred in denying the forfeiture penalty found in La.R.S. 23:1208.1.

3.   The WCJ erred in awarding penalties and attorney fees.

**ANALYSIS**

A workers' compensation claimant has the burden of proof to establish that a work-related accident occurred by a preponderance of the evidence. *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992). In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is afforded great weight. *Id.* "A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's

version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* at 361.

The manifest error standard of review applies to factual findings in a workers' compensation case. *Chaisson v. Cajun Bag & Supply Co.*, 97-1225 (La. 3/4/98), 708 So.2d 375. In applying the manifest error standard, we must determine, not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though we may feel that our own evaluations and inferences are as reasonable. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Lanclos v. Coastal Food, LLC*, 04-222 (La.App. 3 Cir. 7/7/04), 877 So.2d 309. Accordingly, if the factfinder's findings are reasonable in light of the record, the appellate court may not reverse or modify the judgment. *Chaisson*, 708 So.2d 375.

The employer argues claimant did not prove that he suffered a work-related accident and corresponding injury. Specifically, it argues claimant did not report the accident timely and did not immediately inform his treating physicians of any work-related accident when he initially began treatment for his back pain.

### A.    *Timely Notification of Accident.*

Claimant maintained, at all times, he informed Harold Nassar of the accident on the date it occurred. According to claimant, he was assured by Nassar that he would note the incident in the company logbook, which was standard procedure. There was testimony in the record which supported claimant's version on this point. Debra Chaisson and Janet Wing both testified they overheard Nassar tell claimant that the incident had been logged.

Also, claimant's conversation with Rodney LePointe indicates claimant's belief

that Nassar had logged the incident. Although LePointe found no such incident was noted in the logbook, he stated that claimant seemed surprised that Nassar had not entered the incident into the log book. According to LePointe, when claimant "kind of mentioned" including the incident in the logbook and LePointe stated he could not do it, claimant responded to him "[t]hat don't matter[,] "Harold's got it documented." Clearly, this testimony supports claimant's assertion that he informed Nassar of the accident.

In his oral reasons, the WCJ specifically stated claimant's testimony "steadfastly and consistently provided the court with what appeared to be a plausible explanation of events." In contrast the WCJ found Mr. LePointe's testimony to be "inconsistent, incredible, and at times almost incomprehensible." Further, the WCJ stated Mr. Nassar "appears from his deposition to be even less credible than Mr. LePointe." The weight and credibility given the witnesses' testimony by the WCJ is entitled to great deference by this court, and while the evidence is conflicting, we can find no manifest error in the decision of the WCJ that a work-related accident did occur.

## B. *Injury Arising from Accident.*

The medical evidence revealed claimant failed to initially inform Dr. Ramm and Dr. Noble of a specific work-related accident. Claimant maintained he did not mention the accident because he believed his back would improve quickly as it always had in the past. The medical evidence indicates claimant had suffered back pain in the past, but it was not until after the date of the accident that the medical records indicate any complaints of radiating pain in claimant's leg. Claimant admitted he had seen Dr. Ramm approximately two years before the accident complaining of back pain, but he had no complaints of leg pain and missed very little

work as a result. The record also showed in the past claimant never missed more than a day or two because of his back and has never filed a previous workers' compensation claim.

The employer also argues claimant suffers from a "lifelong spondylolisthesis in his lumbar spine, a condition which has slowly degenerated, over time, to the point where it needs surgery to be repaired." Claimant does not dispute that this back condition preexisted the accident. However, as claimant notes, it is well established that a worker's preexisting condition does not bar his recovery under the workers' compensation laws because an employer takes the worker as he finds him. *Guillory v. U.S. Fidelity & Guaranty Ins. Co.*, 420 So.2d 119 (La.1982); *Thompson v. Coushatta Educ. Dept.*, 04-07 (La.App. 3 Cir. 6/16/04), 876 So.2d 961. A worker's claim for disability benefits will not be disqualified if the work-related injury aggravates, accelerates, or combines with an infirmity to produce disability for which compensation is claimed. *Cadiere v. West Gibson Products, Co., Inc.*, 364 So.2d 998 (La.1978); *Baker v. Conagra Broiler Co.*, 93-1230 (La.App. 3 Cir. 5/4/94), 640 So.2d 494, *writ denied*, 94-1435 (La. 9/23/94), 642 So.2d 1289. "Aggravation of a preexisting injury may constitute a disabling injury when, for example, the plaintiff begins to suffer new symptoms after the second workplace accident." *Halker v. American Sheet Metal*, 03-678, p. 4 (La.App. 3 Cir. 12/10/03), 861 So.2d 740, 744, *citing Howell v. Service Merchandise Co., Inc.*, 95-79 (La.App. 3 Cir. 8/9/95), 663 So.2d 96.

Claimant sought no medical care for his back for approximately two years before the February 26, 2002 work accident. The employer's records revealed claimant missed very little time from work in the two years prior to the accident. Claimant testified his back pain after February 26, 2002 was substantially worse than

ever before. He also complained of pain radiating into his leg for the first time following the work accident. There was also testimony from Dr. Noble that the highly physical activity claimant was doing at the time of the accident could have aggravated his preexisting condition. Considering these facts, we cannot say the WCJ erred in finding claimant established that the February 26, 2002 accident was the most reasonable explanation for his injury and disability.

## C. Forfeiture of Benefits under La.R.S. 23:1208.1.

The employer argues even if it were found an accident and resulting injury occurred, claimant nevertheless has forfeited benefits under La.R.S. 23:1208.1. Specifically, the employer contends claimant answered no to a question on his "Second Injury Fund" questionnaire as to whether he ever received treatment for his back, neck or knee.

In *City of Eunice v. Carrier*, 01-1184, pp. 3-5 (La.App. 3 Cir. 2/20/02), 821 So.2d 3, 7-8, this court presented the following summary of the elements necessary to establish a case of fraud that would serve to forfeit a claimant's benefits pursuant to La.R.S. 23:1208.1:

> There are three component parts to establishing a Section 1208.1 violation: (1) untruthfulness; (2) prejudice; and (3) notice.

> Furthermore, the claimant must do more than simply provide untruthful answers before forfeiting benefits. The employer must also prove that the untruthful statements were prejudicial to it and that it provided the employee with statutory notice. La.R.S. 23:1208.1 applies when an employee is dishonest on an employer's medical questionnaire before the accident or injury. [*Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7.] In *Resweber* [*Id.*], the supreme court concluded that the legislature imposed forfeiture under La.R.S. 23:1208.1 strictly for when the employer suffers prejudice. An employer is prejudiced only when the false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund." [La.R.S. 23:1208.1.] An untruthful statement on the questionnaire regarding a preexisting condition, may be prejudicial to the employer's ability to recover from a second injury fund. [*Resweber*,

660 So.2d 7.]

The employer may obtain medical information from the employee about preexisting conditions. By reviewing the information provided on the medical history questionnaire, the employer may determine if he has hired a worker with a permanent partial disability for second injury fund purposes. [*Wise v. J.E. Merit Constrs., Inc.*, 707 So.2d 1214.] Permanent partial disability is statutorily defined as "any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become injured." [La.R.S. 23:1378(F).]

Because statutory forfeiture is a harsh remedy, its application must be strictly construed. . . .

. . . .

Moreover, in *Wise* [707 So.2d at 1217], the Louisiana Supreme Court stated:

> A work injury subsequent to a known permanent partial disability qualifies an employer to seek reimbursement for worker's compensation benefits from a statutorily designated "Second Injury Fund" under certain circumstances. A claimant's untruthful statement regarding his permanent partial disability which prejudices his employer's ability to seek reimbursement from the fund gives rise to an affirmative defense under La.R.S. 23:1208.1, whereby the injured employee forfeits all compensation benefits.

Thus, forfeiture should occur under narrow circumstances. "There must be an untruthful statement; prejudice to the employer; and compliance with the notice requirements of the statute. An employer has the burden of proving each element within the statute. The lack of any one of the elements is fatal to an employer's avoidance of liability." [*Id.* at 1218.]

In his oral ruling, the WCJ made the following comments regarding the employer's assertion that claimant committed fraud pursuant to La.R.S. 23:1208.1:

> It has been my experience that most laborers, when they are asked if they have a back condition, translate that question into a query as to whether they suffered from some disease or disorder of such magnitude that they are substantially restricted from performing work they're accustomed to doing. That's not the case here. There's absolutely nothing in the record to suggest that any treating physician informed the claimant he suffered from this particular malady. And nowhere in R.S.

> 1208.1 is his particular problem listed as a disability which permits a legal presumption of being a pre-existing permanent partial disability.
>
> I grant you he was less than candid when he answered the medical question posed to him, but untruthfulness and inaccuracy is not the same thing as fraud because if a claimant has no knowledge of a pre-existing partial permanent disability, there can be no fraud; and his answers to the medical questionnaires don't come close to rising or sinking to the level of a deliberate lie calculated to receive benefits. The fact that he saw Dr. Ramm in 2002 and that he went to a chiropractor more than ten years ago before the accident is pretty thin evidence upon which to build a fraud case even if he was not forthcoming with that information at his deposition.

The manifest error-clearly wrong standard applies to the factual determinations of a WCJ where an employer has alleged that a claimant has committed fraud pursuant to La.R.S. 23:1208.1. *Lanclos v. Coastal Food, LLC*, 04-222 (La.App. 3 Cir. 7/7/04), 877 So.2d 309; *Colonial Nursing Home v. Bradford*, 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (4/21/03), 841 So.2d 802.

We find no error in the WCJ's conclusion that claimant did not commit fraud. There is no medical evidence in the record to indicate claimant knew he had lumbar spondylolisthesis or that his back condition was potentially serious. The record supports claimant's testimony that in the past his back would get sore on occasion, but it would resolve after a short period of rest. We agree with the WCJ that claimant did not have the prior knowledge that would facilitate making untruthful statements in violation of La.R.S. 23:1208.1. "[P]ursuant to *Wise* [*v. J.E. Merit Constrs., Inc.*, 97-0684 (La.1/21/98), 707 So.2d 1214], . . . if a claimant has no knowledge of a preexisting partial permanent disability, there can be no fraud. *Lanclos*, 877 So.2d at 319.

**D.    *Penalties and Attorney Fees.***

Lastly, the employer contends the WCJ erred in awarding penalties and attorney fees. A workers' compensation judge has great discretion in deciding

whether to allow or disallow penalties and attorney fees, and the decision will not be disturbed absent abuse of that discretion. *Frank v. City of Lake Charles*, 04-820 (La.App. 3 Cir. 11/10/04), 887 So.2d 679. Upon a thorough analysis, we have not discovered any abuse of discretion. The employer's basis for denying the claim was based on the version of events supplied by its supervisors, Lepointe and Nassar. The WCJ specifically found those two witnesses were lacking credibility and the employer's reliance on them to withhold payment of benefits was unreasonable.

### E. *Additional Attorney Fees for Appeal.*

Claimant answered the appeal and requests an award of additional attorney fees for work performed on appeal. An award for attorney fees for work done on appeal is warranted when the appeal has necessitated additional work on the attorney's part. *Colonial Nursing Home v. Bradford*, 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (La.4/21/03), 841 So.2d 802. Considering claimant's attorney had to do additional legal research, prepare a brief and orally argue the case before this court, we find an additional award of $2,500.00 is reasonable under these circumstances.

### DECREE

For the foregoing reasons, the judgment in favor of claimant, Michael Chaisson, is amended to award an additional $2,500.00 in attorney fees. In all other respects, it is affirmed. Costs of this appeal are assessed to the employer, Philip Services Corporation.

**AFFIRMED, AS AMENDED.**